IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ELVIA C.,[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 24-1204-JWL |
| FRANK BISIGNANO,[2] | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) residual functional capacity (RFC) assessment or her evaluation of Plaintiff's allegation of symptoms, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On May 7, 2025, Mr. Bisignano was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Bisignano is substituted for Acting Commissioner Lee Dudek as the defendant. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

**I.     Background**

Plaintiff protectively filed an application for SSDI benefits on August 21, 2021. (R. 30, 236-38). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ failed properly to make a function-by-function assessment of her abilities before assessing her exertional level in accordance with Social Security Ruling (SSR) 96-8p and erred in evaluating her allegations of symptoms resulting from her impairments.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the

Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in Plaintiff's Social Security Brief.

## II.     RFC Function-By-Function Assessment

Plaintiff notes that the ALJ found she "could perform 'light work as defined in 20 CFR 404.1567(b)' with some postural and environmental limitations."  (Pl. Br. 7) (quoting R. 35).  She argues the ALJ "did not provide the limitations in a function-by-function manner as required by SSR 96-8p."  Id.  Plaintiff argues that because the ALJ's RFC assessment provided for "light work as defined in 20 C.F.R. 404.1567(b)" (R. 35), and that regulation does not specify the maximum amount of time required to sit, stand, or walk in light work, then the ALJ did not describe Plaintiff's ability to sit, stand, and walk in a function-by-function manner.  (Pl. Br. 8).  Plaintiff appeals to this court's

4

opinion in Ruben M. v. Kijakazi, Civ. A. No. 20-2530-JWL, 2022 WL 457796 (D. Kan. Feb. 15, 2022) to argue that a failure to state the claimant's sitting, standing, and walking ability in the RFC assessment demonstrates that "this [c]ourt was unable to find support for finding that the ALJ considered the claimant's ability to sit, stand, or walk before finding he could perform a range of light work."  (Pl. Br. 9) (citing 2022 WL 457796, *4).

The Commissioner responds that the regulation at issue establishes that light work requires "'a good deal of walking or standing' or if a job involves sitting most of the time, 'some pushing and pulling of arm or leg controls,'" and SSR 83-10 explains "'the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.'"  (Comm'r Br. 8) (quoting, first 20 C.F.R. § 404.1576(b), then 1983 WL 31251, at *6).  He argues that Dr. Lee, whose opinion the ALJ found persuasive, found Plaintiff could stand and/or walk about six hours in an 8-hour workday and sit about six hours in an 8-hour workday.  Id. 9.

**A.     SSR 96-8p Standard**

As relevant here, the Commissioner stated the purpose of SSR 96-8p is "to emphasize that:"

> 3. When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.
>
> 4. The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c),

5

>   and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.
>
>   5. RFC is not the <u>least</u> an individual can do despite his or her limitations or restrictions, but the <u>most</u>.

SSR 96-8p, 1996 WL 374184, *1 (emphases in original). In the text of SSR 96-8p, the ruling explains:

>   when there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.
>
>   ***
>
>   <u>RFC and exertional levels of work.</u> The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. At step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of "sedentary," "light," "medium," "heavy," and "very heavy" work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it.
>
>   RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy. However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level.

<u>Id.</u> at *3.

The ruling goes on to explain with examples that a function-by-function assessment at step 4 is necessary because if an individual is erroneously determined to be unable to perform past relevant work at step 4 he may, consequently, erroneously be

6

found disabled at step 5. 1996 WL 374184, *3. Contrarywise, if when using an exertional category, a person is found unable to perform past relevant work as she actually performed it but may perform it as usually performed, she may erroneously be found able to perform the past work if the adjudicator failed to consider other restrictions or limitations. Id. Finally, because the Medical-Vocational Guideline rules are based on exertional categories, they may be erroneously applied if a function-by-function assessment has not been done. Id.

### B.    The ALJ's Relevant Findings

The ALJ noted that Plaintiff did not appear at her hearing to testify and that her attorney agreed to proceed without her. (R. 30). She found that Plaintiff's alleged onset date was November 1, 2020. and her date last insured was December 31, 2020. Id. 32. The ALJ found Plaintiff has the severe impairments of Parkinson's Syndrome, arthritis, and obesity; the non-severe impairments of gastric esophageal reflux disease, depression, and anxiety, and that diabetes was not medically determinable at the relevant time because it was diagnosed later. Id. 33. In evaluating the severity of Plaintiff's mental impairments in her step two analysis, the ALJ recognized step two and three evaluations do not present an RFC, but that the RFC "assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." Id. 34

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Id. She found that Plaintiff is able to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) except she cannot climb ladders, rope, or scaffolds; she can only handle

7

and finger frequently with either hand; and she must avoid concentrated exposure to all hazards. (R. 35).

### C. Analysis

Plaintiff's argument misapprehends the ALJ's RFC assessment at finding number 5 of her decision. She found that,

> through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except never climb ladders, ropes, or scaffolds; can frequently handle and finger bilaterally; and the claimant should avoid concentrated exposure to all hazards.

Id. (bold omitted). The structure of the finding reveals the ALJ was attempting to convey the RFC assessed by the shortest means possible, so she expressed the RFC as the capacity for the full range of light work, except for the limitations Plaintiff's capabilities place on that range. She then specifically expressed those few limitations as Plaintiff's capabilities which were less than the full range of light work—never climbing ladders, ropes, or scaffolds; only frequently handling and fingering; and avoiding concentrated exposure to all hazards. Expressed in this manner, the ALJ was clearly expressing her finding that Plaintiff is able to sit 6 hours in an 8-hour workday and to stand and/or walk 6 hours in an 8-hour workday.

While Plaintiff is correct that 20 C.F.R. §404.1576(b) does not state light work requires 6 hours of walking and or standing and 6 hours of sitting in an eight hour day, it does explain "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Moreover, as the Commissioner points out SSR 83-10 explains

8

"the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." 1983 WL 31251, at *6. Thus, "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)," when not otherwise limited, clearly conveys the ability to sit 6 hours in an 8-hour workday and to stand and/or walk 6 hours in an 8-hour workday (along with all the other abilities required of a full range of light work).

The real issue for the court is whether the ALJ assessed Plaintiff's work-related abilities on a function-by-function basis before she expressed those abilities in terms of the exertional level of "light work." The ALJ's decision was issued February 8, 2024, the sixth page of that decision presents the ALJ's RFC assessment, and nowhere in the decision does the ALJ explicitly express Plaintiff's ability to sit, stand, or walk during an 8-hour workday. However, SSR 96-8p does not require an ALJ to express a claimant's abilities on a function-by-function basis in the decision before stating an exertional level in the decision. Rather, the SSR requires the abilities be <u>assessed</u> on a function-by-function basis before being <u>expressed</u> in terms of an exertional level.

The record in this case reveals the ALJ <u>assessed</u> Plaintiff's sitting, standing, and/or walking abilities on a function-by-function basis before she wrote the decision in this case <u>expressing</u> Plaintiff's RFC in terms of the light work exertion level. This is shown by the fact the ALJ expressed the hypothetical scenario she used to represent Plaintiff's abilities:

> This person can lift 20 pounds occasionally, ten pounds frequently, can stand, sit, or walk for six hours in an eight-hour day. Can -- postural activities, no limitations with the exception of not work or never work on

9

>ladders, ropes, scaffolds -- ladders, ropes, scaffolds. I'm going to say could do the other postural activities on a frequent not constant basis. That would be climb, balance, stoop, kneel, crouch, crawl, and then handling and fingering would be reduced to frequent, not constant. And then let's see. I believe that would handle it. Why don't I say avoid concentrated exposure to hazards such as heights or dangerous machinery.

(R. 57-58). This RFC assessment is supported by the state agency medical consultant's prior administrative medical findings which the ALJ accepted as persuasive. Id. 75-76.

The court notes that the ALJ's hypothetical provided additional postural limitations of frequent, not constant, which is a greater limitation than opined by the state agency medical consultant or than ultimately included in the RFC assessed. Compare, id., 57-58, with id. 35, 75-76. If this is error, it is harmless because the vocational expert testified, and the ALJ accepted, that Plaintiff is able to perform representative occupations more restrictive than the RFC ultimately assessed.

This court's decision in Ruben M. does not require a different finding. In Ruben M. the court rejected reliance on SSR 83-10, C.F.R. 404.1567(b), and the ALJ's hypothetical to the vocational expert, which it has accepted above. However, after rejecting those arguments, the court explained it "believes deference is due an ALJ's decision where the decision can be understood, but such is not the case here." 2022 WL 457796, at *3. The court explained the ALJ found Plaintiff's conflicting reports of sitting, standing, and walking abilities also conflicted "with the prevalence of silent/benign clinical examination signs in areas like sitting, standing, [and] independently ambulating," noted that the ALJ found the state agency medical

10

consultants' opinions were unpersuasive, and concluded the ALJ "never made a finding of Plaintiff's actual sitting or standing and walking abilities." 2022 WL 457796 at *3. In this case, the record reveals no wavering on the part of the ALJ, she clearly discounted Plaintiff's allegations of symptoms, she found the state agency medical consultant's opinion persuasive, and she presented the limitations in her hypothetical to the vocational expert. Thus, as explained above, the ALJ clearly assessed Plaintiff's limitations on a function-by-function basis before expressing them in terms of the exertion level "light work."

### III.   Plaintiff's Allegations of Symptoms

Plaintiff notes that on her Disability Reports she "reported that her conditions led to a decline in her 'overall stamina,' and that she was not able to walk or stand for even short periods of time. She reported suffering from symptoms including pain, shuffling, low energy, poor strength, stiff movements, and difficulty walking." (Pl. Br. 10) (citing R. 267, 281). She acknowledges that the ALJ summarized her statements about symptoms and limitations and summarized the medical record for the relevant period. Id. 11. Plaintiff argues that despite asserting she provided reasons in the decision to discount Plaintiff's allegations of disabling symptoms, the ALJ did not "attempt to explain or provide a rationale for how the records she summarized were inconsistent with [Plaintiff's] subjective statements." Id. Plaintiff argues, "the ALJ failed to mention parts of the record that support [Plaintiffs] statements within his summary of the record." Id.

Plaintiff argues the ALJ's reliance on normal exam findings is insufficient to discount Plaintiff's allegations because SSR 16-3p states "the ALJ 'will not' disregard a

11

claimant's statements about her symptoms only because the objective medical evidence does not support the statements." (Pl. Br. 12) (citing SSR 16-3p, 2016 WL 1119029, *5). She argues the ALJ failed to consider the nature of Plaintiff's treatment and failed to closely and affirmatively link her findings to substantial evidence. Id. 12-13.

The Commissioner responds that the ALJ properly discounted Plaintiff's allegations of symptoms. He argues, "The ALJ's discussion as to Plaintiff's subjective complaints throughout the decision shows a proper analysis based on the limited record evidence and her reasoning can easily be discerned." (Comm'r Br. 13-14). He continues, "Plaintiff's arguments ignore the deference given to the ALJ's factual findings, especially as to a claimant's subjective claims of limitations. The issue on appeal is not whether an ALJ's factual findings are 'correct,' but merely whether it is feasible under this record for a reasonable factfinder to conclude as the ALJ did." Id. at 15 (citing Lax, 489 F.3d at 1084). He notes,

> Plaintiff completed her initial report to the agency which contained her subjective complaints nearly 14 months after the relevant period ended, and she did not provide testimony about her functioning during the relevant period. While her symptoms may have worsened after this, the limited evidence simply did not support Plaintiff's contentions that she was unable to stand and walk for even short periods of time or that she had poor strength and a shuffling gait during the relevant period.

Id. (citations omitted).

The Commissioner argues Plaintiff's assertion the ALJ did not address the nature of her treatment is erroneous because the record does not reflect physical therapy between June 2020 and January 2021, the ALJ discussed Plaintiff's treatment during that period, and noted her medications had been continued and renewed. He argues Plaintiff's

argument the ALJ did not discuss certain other positive exam findings is irrelevant because Plaintiff "does not indicate how these findings are inconsistent with the standing and walking requirements of light work." (Comm'r Br. 17).

### A.      Standard for Evaluating Allegations of Disabling Symptoms

The court's review of an ALJ's evaluation of a claimant's allegations of symptoms is deferential. Such determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations[3] are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

The framework for a proper analysis of a claimant's allegation of symptoms is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). An ALJ must consider (1) whether the claimant has established a symptom-producing impairment by objective medical

---

[3] Talley, Broadbent, Wilson, Hackett, Luna, Thompson, and Kepler were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination." Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529). Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 Fed. App'x. 542, 546 (10th Cir. 2017). Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017), is still the proper standard to be used as explained in the regulations in effect on February 8, 2024, when this case was decided. Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p and is no longer a valid factor to be considered.

evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. See, Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the Luna framework). The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures Plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii). The court has recognized a non-exhaustive list of factors which overlap and expand upon the factors promulgated by the Commissioner. Luna, 834 F.2d at 165-66. These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

### B.     The ALJ's Findings

The ALJ summarized the standard for evaluating allegations of disabling symptoms as discussed above and stated that she had applied that standard as contained

in 20 C.F.R. § 404.1529 and SSR 16-3p. (R 35). She noted Plaintiff's assertion "that she cannot work due to Parkinson, arthritis, and depression. Id. She noted Plaintiff's report

> that Parkinson's causes depression, anxiety, tremors, pain, shuffling, ridged movements, heavy limbs, low energy, poor strength, stiff movements, and difficulty walking. She also mentioned a dragging leg. The claimant reported to her neurologist that her symptoms of Parkinson's syndrome are worse when she is nervous.

Id. (citations omitted). She noted Plaintiff "has also reported to [a] treatment provider that she is not sleeping well, has up and down moods, and fatigue." Id., 36. She found. "The claimant's allegations are not generally consistent with the medical evidence of record during the relevant period. The record does support some limitations prior to the date last insured, but not to the extent alleged by the claimant." Id., 36.

> The ALJ discussed the brevity of the alleged period of disability at issue:
>
> The claimant has alleged that her disability began on November 1, 2020. However, due to her date last insured being December 31, 2020 the period at issue is fairly brief. The medical evidence of record must show that she was disabled during this period. The records surrounding this period have been considered to assist in determining what her impairments and abilities were during this period. These records do not support the significant limitations alleged by the claimant. The limitations supported by these records have been included in the residual functional capacity.

Id.

The ALJ specifically discussed a telehealth visit by telephone with a neurologist for Parkinson's Management on June 30, 2020, an emergency room visit in August 2020 for a head injury when a heavy metal container fell and hit her, a follow-up office visit in October 2020, and another Parkinson's Management visit on January 6, 2021—outside the period at issue but nonetheless considered because it is only a week after her date last insured. Id. The ALJ noted the January 6th visit was also a telehealth visit but used

15

video and audio. (R. 37). The ALJ also noted that at this visit Plaintiff reported she "generally is fairly functional," she "denied headaches and has otherwise been feeling well," and "she is exercising and is trying to be more fit." Id. The ALJ found "these records are not consistent with the claimant's allegations of significant limitations that prevent her from working any job." Id. The ALJ found the prior administrative medical findings of the state agency medical consultant that Plaintiff could perform a range of light work and of the psychological consultant that Plaintiff had only mild limitations in each of the broad areas of mental functioning are persuasive. Id. She found, "There were no additional records submitted at the hearing level relevant to the period at issue." Id.

### C.     Analysis

Plaintiff's claims of error in the ALJ's evaluation of Plaintiff's allegations of disabling symptoms misunderstands the burden of proof in a Social Security disability case, the posture of this case, and the deference afforded an ALJ's findings about a claimant's allegations of symptoms. First, it is Plaintiff's burden to prove her symptoms are disabling, it is not the agency's burden to prove they are not. Thus, the ALJ's findings that Plaintiff's allegation are not consistent with the medical records; that the medical records around the period at issue (the records from June 20, 2020, through January 6, 2021, as discussed by the ALJ), do not support the significant limitations alleged; that Plaintiff's reports of being fairly functional, denying headaches and reporting feeling well, exercising and trying to be more fit are inconsistent with her allegations of significant limitations that prevent her from working: that the consultants' opinions are persuasive; and that there were no other records submitted which are

16

relevant to the period at issue all constitute reasons given by the ALJ to discount Plaintiff's allegations of disabling symptoms. Therefore, it becomes Plaintiff's burden to point to relevant evidence which compels finding her allegations of symptoms are correct. She has not done so. Moreover, the court has reviewed the record and finds that it supports the ALJ's reasons.

While Plaintiff would have preferred the ALJ to provide particular examples of direct conflicts between her statements and individual factual evidence, that is not the requirement for an ALJ's evaluation of a claimant's allegations of symptoms. And the posture of this case makes that particularly difficult. Here, the period of disability alleged is only two months, November and December 2020. Further complicating the issue is the fact there is no record of treatment during that period. Therefore, the ALJ reasonably considered treatment records before and shortly after that period. Further, Plaintiff did not personally appear at the hearing to provide any additional information regarding the period at issue. Thus, Plaintiff provides no basis to reject the ALJ's rationale.

Finally, as the Commissioner argues, the court's review of the Commissioner's evaluation of alleged symptoms requires greater deference than that due the Commissioner's decision in general. Such determinations are the province of the finder of fact who reviewed the evidence in the first instance and will not be overturned when supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Wilson, 602 F.3d at 1144; Hackett, 395 F.3d at 1173. They are generally treated as binding on review. Talley, 908 F.2d at 587; Broadbent, 698 F.2d at 413.

Plaintiff has shown no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated September 15, 2025, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**
